UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALFRED JOHNSON,

                Plaintiff,

v.                                      Case No:   2:13-cv-137-FtM-29CM

CAROLYN W. COLVIN,
Commissioner of Social Security,[1]

                Defendant.

_____

## REPORT AND RECOMMENDATION[2]

Plaintiff, Alfred Johnson, is appealing the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). For the reasons set forth herein, the Court recommends that the Commissioner's decision be **REVERSED and REMANDED** pursuant to 42 U.S.C. § 405(g), sentence four.

### I.     Issues on Appeal

There are two issues on appeal: (1) whether the Appeals Council erred in denying review after new and material evidence was submitted, and (2) whether the

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. No further action need be taken to continue this suit pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14)** days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

ALJ improperly relied exclusively on the Medical-Vocational Guidelines ("the Grids") instead of calling a vocational expert ("VE") in finding Plaintiff was not disabled at step five.   Specifically, Plaintiff contends that the ALJ's residual functional capacity ("RFC") finding is not supported by substantial evidence because the ALJ failed to consider a psychological evaluation by Dr. Nancy T. Spencer, Psy.D ("Dr. Spencer's evaluation"), which found that Plaintiff had an intelligence quotient ("I.Q.") score of 69.   Plaintiff asserts that had the ALJ considered Dr. Spencer's evaluation, Plaintiff would satisfy the criteria for Listing 12.05C, mental retardation, and Plaintiff would have been found disabled at step three.   Although the Plaintiff bears the burden of establishing that he is disabled at steps one through four of the sequential evaluation process, the Government bears the burden at step five.   For the reasons stated herein, the undersigned recommends that the Court remand this case to the Commissioner to consider Dr. Spencer's evaluation and assess whether Plaintiff can perform other work in the national economy by calling a VE to testify.

## II.   Procedural History

On September 21, 2009, Plaintiff applied for disability, DIB, and SSI, alleging that he had been disabled and incapable of working since May 29, 2009.   Tr. 13, 62, 102.   The Social Security Administration ("SSA") denied Plaintiff's claim initially on January 15, 2010 (Tr. 68-71), and upon reconsideration on June 11, 2010.   Tr. 73-78. Challenging the decision, Plaintiff requested and received a video hearing before an ALJ, held on July 29, 2011, during which he was represented by an attorney.   Tr. 13, 26-37.   Plaintiff testified at the hearing.   Tr. 29-36.

On September 16, 2011, the ALJ issued a decision finding Plaintiff not disabled from May 29, 2009, through the date of the decision.  Tr. 13-21.  Following the ALJ's decision, Plaintiff filed a Request for Review by the Appeals Council and submitted Dr. Spencer's evaluation, which was prepared on December 2, 2011 – after the ALJ had issued his decision – at the request of Plaintiff's counsel.  Dr. Spencer examined Plaintiff and diagnosed him with mild mental retardation.  Tr. 363.  Dr. Spencer administered the Wechsler Adult Intelligence Scale, and determined that Plaintiff had a verbal I.Q. of 67 and a full scale I.Q. of 69.  Tr. 362-64.  Dr. Spencer concluded: "Given Mr. Johnson's performance on this IQ test coupled with his history of being successful only in manual labor employment settings, it is my opinion that he would be unable to successfully be placed in an employment setting that relies on basic intellectual knowledge (e.g. reading, writing)."  Tr. 364.  She further observed that Plaintiff's physical health would prevent him from returning to manual labor employment.  *Id.*

The Appeals Council denied Plaintiff's request for review, because in its view the new information did not provide a basis for changing the decision of the ALJ.  Tr. 2.  The Order of the Appeals Council made Dr. Spencer's evaluation part of the record.  Tr. 6.  Accordingly, the Appeals Council stated that because it denied Plaintiff's request for review, the ALJ's September 16, 2011 decision is the final decision of the Commissioner.  Tr. 1.

On February 25, 2013, Plaintiff timely filed his Complaint with this Court under 42 U.S.C. §§ 405(g), 1383(c)(3), arguing that the ALJ's decision is not supported

by substantial evidence.   Doc. 1.   Plaintiff argues that the matter should be remanded to the Commissioner for consideration of Dr. Spencer's evaluation and testimony from a VE.   The parties have briefed the issues, and the matter is ripe for review.

### III.   Summary of the ALJ's Decision

The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2010.   Tr. 15.   At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 29, 2009, the alleged onset date.   *Id.*   At step two, the ALJ determined that Plaintiff had "the following severe impairments: status post work injury with chronic low back pain, hypertension, gastroesophageal reflux disease (GERD), borderline intellectual functioning by history, and depression."   *Id.*   At step three, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."[3]   Tr. 19.   Specifically, the ALJ considered Plaintiff's low back pain and concluded that his condition did not satisfy the severity requirements of section 1.04 of the listings because he does not have the requisite neurological deficits.   Tr. 16; 20 C.F.R. pt. 404, spbpt. P, app. 1, § 1.04.   Further, the ALJ found that the Plaintiff's hypertension did not meet any of the severity requirements in the section 4.00 listings

---

[3] Appendix 1 is the Listing of Impairments which "describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."   20 C.F.R. § 405.1525(a).

and his GERD did not meet any of the severity requirements of the section 5.00 listings.   *Id.*; 20 C.F.R. pt. 404, spbpt. P, app. 1, §§ 4.00, 5.00.

With respect to the Plaintiff's mental impairments, the ALJ found that they did not meet or medically equal the criteria in the section 12.02 and 12.04 listings for mental disorders.   *Id.*   20 C.F.R. pt. 404, spbpt. P, app. 1, §§ 12.02, 12.04.   In doing so, the ALJ explicitly considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).   *Id.*   These four broad functional areas are known as the "paragraph B" criteria.

In the first functional area – activities of daily living – the ALJ found that Plaintiff has mild restrictions, noting that the Plaintiff can tend to his personal care, but he does not cook or clean due to his physical condition.   Tr. 16.   In the second functional area – social functioning – the ALJ found that the Plaintiff had no difficulties.   *Id.*   Plaintiff lives with family and spends time with others and reported no problems getting along with others.   *Id.*   The ALJ stated that Plaintiff is capable of getting along with authority figures and has never been laid off because of problems getting along with other people.   *Id.*   In the third functional area – concentration, persistence or pace – the ALJ found that the Plaintiff had moderate difficulties.   *Id.*   The ALJ noted that Plaintiff appears to have some difficulty in this area, but his memory was intact during a March 2010 physical consultative examination.   Tr. 16.   Plaintiff can follow spoken instructions with some demonstration.   *Id.*   In the fourth functional area – episodes of decompensation –

the ALJ found that Plaintiff had experienced no episodes of decompensation which have been of extended duration, according to the medical evidence of record.   *Id.*

Thus, the ALJ determined that because Plaintiff's medically determinable mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation that have been of extended duration, the paragraph B criteria were not satisfied.   *Id.*   *See* 20 C.F.R. § 404.1520(c).   Finding that the paragraph B criteria were not met, the ALJ further stated that he also considered whether the "paragraph C" criteria were satisfied, and found that the evidence failed to establish the presence of the criteria.[4]   Tr. 16.

The ALJ then determined that Plaintiff had the RFC to perform a wide range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), but with non-exertional limitations:   he could not climb ladders, ropes, or scaffolds, he should avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery, and he had moderate limitations in understanding, remembering, and carrying out detailed instructions and responding appropriately to changes in the work setting.   Tr. 17.   The ALJ further found that Plaintiff has moderate limitations in understanding, remembering, and carrying out details instructions and responding appropriately to changes in the work setting.   *Id.*   Although he did not

---

[4] The Commissioner will assess the paragraph C criteria only if the paragraph B criteria are not satisfied.   20 C.F.R. pt. 404, spbpt. P, app. 1, § 12.00.   Although not cited by the ALJ, the Court assumes that the ALJ evaluated the paragraph C criteria for Listings 12.02 and 12.04, the same listings the ALJ evaluated the paragraph B criteria for. Additional functional criteria in paragraph C criteria are included in Listings 12.02, 12.03, 12.04, and 12.06.   The ALJ made no findings regarding Listing 12.05, which is one of the issues in this appeal.

believe that the Plaintiff is functionally limited to the extent alleged, the ALJ reduced the RFC to account for Plaintiff's condition and symptoms.   Tr. 20.   After assessing the Plaintiff's RFC for light work, the ALJ found that Plaintiff could not perform his past relevant work at step four of the sequential evaluation process.   *Id.*   The ALJ, therefore, had to determine at the fifth and final step if Plaintiff could perform other work in the national economy.

At the fifth step, the ALJ's findings reflect four non-exertional limitations – mental impairment,[5] some limitation in climbing and balancing, inability to ascend or descend ladders or scaffolds, and restriction from being on unprotected elevations and near dangerous moving machinery.   Tr. 21.   Relying exclusively on the Grids, the ALJ summarily found that these limitations have little or no effect on the occupational base of unskilled light work and did not have a significant effect on work that exists at all exertional levels pursuant to SSR 83-14 and 85-15.   *Id.*   The ALJ further found that Plaintiff's mental impairment do not significantly erode the occupational base of unskilled work because he does not have a substantial loss in the ability to understand, remember, and carry out simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes while in a routine work setting on a sustained basis over a normal 8-hour work day, pursuant to SSR 85-15.   *Id.*

---

[5] Plaintiff's mental impairments found by the ALJ include borderline intellectual functioning by history, and depression, which the ALJ considered "severe."   Tr. 15.

IV.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. § 404.1520. The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).   The district court must consider the entire record, including new evidence submitted to the Appeals Council for the first time, in determining whether the Commissioner's final decision is supported by substantial evidence.   *Ingram v. Astrue*, 496 F.3d 1253, 1265 (11th Cir. 2007).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206,

1210 (11th Cir. 2005) ("Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'").

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## V.   Relevant Evidence

Because the issues raised in this appeal relate to Plaintiff's mental impairments, the following is a summary of the relevant evidence in the record concerning that issue.

### a.   *Plaintiff's Testimony*

Plaintiff was fifty-four years old at the time of the ALJ's decision. Tr. 102. Plaintiff received a certification of completion from high school and testified that he attended special education classes. Tr. 29, 31. He testified that he was pushed through classes, despite not understanding the material. Tr. 31. He claims that he is unable to read and write, and that his daughter fills out paperwork for him. Tr. 29. He stated that he is unable to understand his bills and unable to make change.

Tr. 29-30.   His daughter does the laundry, cleaning, and grocery shopping.   Tr. 34-35.   After his wife passed away he reports he was depressed, experiencing short and long-term memory impairment, and had difficulty sleeping.   Tr. 34.   Plaintiff previously worked as a landscape laborer and laundry operator.   Tr. 135.

    b. *Non-Examining Consultants*

State Disability Determination Services consultant Alan Harris, Ph.D., opined in a Psychiatric Review Technique dated January 14, 2010, that Plaintiff has moderate limitations in understanding, remembering, and carrying out detailed instructions, maintaining attention and concentration for extended periods, and completing a normal workday and workweek without interruptions from psychologically-based symptoms.   Tr. 286-303.   His report indicated that Listing 12.04, affective disorders, was applicable.   Tr. 289.   Dr. Harris stated that Plaintiff is a "slow learner" and suffers from moderate mental distress.   Tr. 298.   With regard to activities of daily living, he also noted that Plaintiff needs reminders for hygiene, does not like to bathe due to pain it causes, needs reminders for medications and appointments and struggles with instructions.   Tr. 298.

State Disability Determination Services consultant Arthur Hamlin, Psy.D., opined in a Psychiatric Review Technique dated June 9, 2010, that Plaintiff has borderline intellectual functioning, major depressive disorder and a reduction in the capability to follow complex instructions, yet has the ability to interact appropriately in a structured setting and sufficient attention to complete simple, routine tasks.   Tr. 324-35.   He reported that Listing 12.02, organic mental disorders, and 12.04,

affective disorders, were applicable.  Tr. 324, 326.  He further noted that Plaintiff scored 10/30 on the Folstein Mini-Mental State Exam ("Folstein"), but opined that the result was inconsistent with other medical evidence of record in the file.  Tr. 335. Nonetheless, he reported that Plaintiff is not able to follow written instructions and has physical pain-related limitations with most activities of daily living.  Tr. 335.

        c.    *Examining Psychologists*

        On September 27, 2006, licensed psychologist, Dr. Claudia Zsigmond, Psy.D., performed a psychological examination of Plaintiff.  Tr. 231-33.  Her report noted that Plaintiff suffers from depression, frequent crying episodes, anhedonia, avolition, decreased social interaction, and feelings of guilt and worthlessness.  Tr. 231.  Dr. Zsigmond further pointed out that Plaintiff has had no mental health evaluation or treatment for the presenting problems.  Tr. 231, 233.  She opined that his functional ability is poor and he has no health insurance.  Tr. 231.  She noted that Plaintiff completed 12th grade, but was enrolled in "slow leaner" exceptional student education programs and reported below average grades.  Tr. 232.  Plaintiff's son reported to her that Plaintiff must be consistently reminded to attend to his hygiene and eat appropriately.  Tr. 233.  She concluded that Plaintiff's prognosis is poor due to his untreated mental illness and recommended that he would benefit from a psychiatric evaluation and grief counseling.  Tr. 233.

        On May 4, 2010, clinical psychologist, Dr. J.L. Bernard, Ph.D., interviewed Plaintiff at the request of the Office of Disability Determination to determine his current level of disability.  Tr. 318.  Dr. Bernard noted that Plaintiff has problems

understanding ongoing conversations and difficulty maintaining concentration.   Tr. 319.   He further stated that Plaintiff had difficulties throughout his life learning new material, which was apparent during his schooling as a young man.   Tr. 319.   He observed that Plaintiff had been placed in special classes in school and was able to make Ds and Cs; but the school pushed him through, and by the end of schooling Plaintiff was barely literate.   Tr. 320.   He noted that Plaintiff was depressed in the past but did not receive any mental health treatment.   Tr. 320.   Dr. Bernard commented, however, that Plaintiff was on a major psychotropic drug, tramadol.   Tr. 320.   He observed that Plaintiff had difficulty throughout his appointment with remembering aspects of his history, but it did not appear to be obfuscation.   Tr. 321. Dr. Bernard administered the Folstein test, and Plaintiff's score (10/30) reflected significant cognitive disorder, which the psychologist opined could be accounted for by Plaintiff's illiteracy.   Tr. 321.   Dr. Bernard noted that many mildly retarded individuals score higher on the Folstein than did Plaintiff.   Tr. 321.   Thus, Dr. Bernard concluded that "[f]or greater diagnostic certainty, a neuropsychological evaluation is always helpful."   Tr. 321.   Dr. Bernard diagnosed Plaintiff with major depressive disorder, early onset dementia with depression, and borderline intellectual functioning by history.   In his opinion, Plaintiff's prognosis was chronic to poor.   Tr. 321-22.

On December 2, 2011, clinical psychologist, Dr. Nancy T. Spencer, Psy.D., completed her evaluation.   She reported that Plaintiff completed the 12th grade in a special learning program and reported that he was pushed through although he could

not complete the work.   Tr. 362.   Dr. Spencer administered the Wechsler Adult Intelligence Scale, and concluded that Plaintiff had a verbal I.Q. of 67, and a full scale I.Q. of 69.   Tr. 362-64.   Given Plaintiff's performance on the I.Q. test, his inability to manage his own financial affairs without assistance, his history of never living independently, and his limited understanding of his medical conditions/medications coupled with a history of these deficiencies beginning during school years, Dr. Spencer diagnosed Plaintiff with mild mental retardation.   Tr. 363.   She concluded:

> Given Mr. Johnson's performance on this IQ test coupled with his history of being successful only in manual labor employment settings, it is my opinion that he would be unable to successfully be placed in an employment setting that relies on basic intellectual knowledge (e.g. reading, writing).   His physical health prevents him from returning to manual labor employment.

Tr. 364.

## V.   Analysis

On appeal, Plaintiff argues that Dr. Spencer's evaluation is new and material evidence that establishes Plaintiff is eligible for benefits under Listing 12.05C for mental retardation.   Defendant responds that the evaluation does not undermine the substantial evidence supporting the ALJ's findings, because the evaluation was prepared three months after the date of the ALJ's decision, is not chronologically relevant to the ALJ's decision and does not state that it is related to the time period at issue in this case.   Defendant further argues that although Plaintiff may have an I.Q. of 69, he has failed to show his impairments meet all of the criteria in the diagnostic description of mental retardation, specifically that he had deficits in adaptive functioning prior to the age of 22.   20 C.F.R. pt. 404, subpt. P, app. 1, §

12.05.   Defendant states that other than Plaintiff's own unsubstantiated statements that he was in special education classes as a child, there is no evidence in the record to support any issues with adaptive functioning before age 22.

Plaintiff also argues that the ALJ improperly relied exclusively on the Grids in finding Plaintiff was not disabled when he should have called a VE to testify.   For the reasons that follow, I find that a remand to the Commissioner is warranted on both issues.

a.   <em>Whether the Appeals Council Erred in Denying Review</em>

The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1.   In making this determination, the ALJ considered the criteria of Listings 12.02 (organic mental disorders) and 12.04 (affective disorders).   Tr. 16.   The ALJ did not expressly consider whether Plaintiff met or equaled Listing 12.05 for mental retardation.

If Plaintiff contends that an impairment meets a listing, as he does here (Doc. 18 at 18-21), he bears the burden of "present[ing] specific medical findings that meet the various tests listed under the description of the applicable impairment." *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).   In doing so, Plaintiff must have a diagnosed condition that is included in the Listings. *Id.* Diagnosis of a listed impairment, however, is not enough, as the claimant must also provide objective medical reports documenting that his or her impairment meets the specific criteria of the applicable listing.   *Id.*; *accord Wilson v. Barnhart*, 284 F.3d

1219, 1224 (11th Cir. 2002).   Further, "[a]n impairment that manifests only some of [the specific] criteria [of the applicable impairment], no matter how severely, does not qualify."   *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Listing 12.05 provides, in pertinent part, that a claimant is disabled if he or she meets the following criteria:

> 12.05 Mental retardation: mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, *or* D are satisfied[:]
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (emphasis added).[6]   Accordingly, in order to meet Listing 12.05, "a claimant must at least[:] 1) have significantly subaverage general intellectual functioning; 2) have deficits in adaptive [functioning]; and 3) have manifested deficits in adaptive [functioning] before age 22."   *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Additionally, a claimant must meet one of the four sets of criteria found in 12.05A, B,

---

[6] The Court cites to Listing 12.05 as it appeared when the ALJ entered his opinion on September 16, 2011.   While Listing 12.05 has not substantively changed since the ALJ's decision, the Court notes that currently Listing 12.05 uses "Intellectual disability" in place of "Mental retardation."

C, or D, in order to show that his or her impairments are severe enough to meet or equal Listing 12.05.   20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A).

Relevant here, as noted above, paragraph C of Listing 12.05 is met when the claimant shows: 1) "a valid verbal, performance, or full scale IQ of 60 through 70"; and 2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function."   *Id.* at § 12.05(C).   "Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities."   *Lowery*, 979 F.2d at 837.   However, "a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior."   *Id.* (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986).   "If a claimant has been able to adapt in functioning after age 22, it is permissible to find that Listing 12.05C has not been met."   *Monroe v. Astrue*, 726 F. Supp. 2d 1349, 1355 (N.D. Fla. 2010).

Plaintiff argues that he is disabled because his impairments meet Listing 12.05C.   In support, Plaintiff cites to Dr. Spencer's psychiatric evaluation, prepared after the ALJ issued his decision.   Plaintiff was referred to Dr. Spencer by his attorney.   Tr. 361.   Plaintiff's attorney argued at the hearing that an I.Q. test may be appropriate, stating, in pertinent part:

> There was a psychological consultative exam by Dr. Bernard relatively recently and she indicated that IQ or neuropsychological testing may be

appropriate.   She noted that many mildly retarded individuals can score in highs of 26 to 30 on the Folstein test, and based on his testimony and that he is illiterate, he may, in fact, meet or equal some more, one of the listings in 12.05, 12.05C, but again, I think he would grid at light or sedentary, but that is just an additional issue that I wanted to submit to you.

Tr. 36.   Because the Court must consider the entire record to determine whether the Appeals Council erred, the Court will review the mental impairment evidence that was before both the ALJ and the Appeals Council in this case to determine whether it was error for the Appeals Council to deny review.   *See Ingram*, 496 F.3d at 1265.

### 1.   Mental Impairment Evidence Before the ALJ

Evidence of Plaintiff's mental impairments that the ALJ considered in his opinion included the reports of non-examining consultants Drs. Harris and Hamlin and examining psychologists Drs. Zsigmond and Bernard, summarized herein. Section V, *supra;* Tr. 18-19.   The ALJ gave Dr. Bernard's conclusions little weight because he found they were not supported by the medical evidence of record and were inconsistent with the record as a whole.   Tr. 18-19.   On the contrary, many of Dr. Bernard's conclusions were consistent with the September 2006 psychological consultative evaluation of examining psychologist, Dr. Zsigmond.   Yet the ALJ did not discuss Dr. Zsigmond's evaluation in detail.   Rather, he only cited it in support of his credibility finding, in which Plaintiff did not report that he was illiterate to Dr. Zsigmond.   Tr. 231-33.   For example, consistent with the later evaluation of Dr. Bernard, Dr. Zsigmond opined that Plaintiff's functional ability was poor and Plaintiff has had no mental health evaluation, recommending that Plaintiff would benefit from a psychiatric evaluation.   Tr. 231-33.

The ALJ relied on the opinions provided by non-examining consultants, Drs. Harris and Hamlin.   Tr. 19.   The ALJ gave deference to the opinion of Dr. Hamlin over that of Dr. Harris, finding that the former was supported by the medical evidence and was more consistent with the record as a whole.   Tr. 19-20.   Yet, consistent with the examining psychologists, Dr. Hamlin stated that Plaintiff was not able to follow written instructions and has physical pain-related limitations with most activities of daily living.   Tr. 335.   Dr. Harris similarly opined that Plaintiff is a slow learner, needs reminders for hygiene, and struggles with instructions.   Tr. 298. Nonetheless, the ALJ found that the medical evidence did not support a finding that the claimant has significant functional mental limitations that rendered him unable to work.   Tr. 20.

2.   Mental Impairment Evidence Before the Appeals Council

In further support of Plaintiff's psychological impairments, Plaintiff submitted Dr. Spencer's evaluation to the Appeals Council.   Tr. 5.   As described in more detail above, Dr. Spencer opined that Plaintiff is mildly mentally retarded.   Tr. 363.   Thus, the key issue is whether the Appeals Council erred in failing to review the ALJ's decision in light of evidence of mental impairment that was already before the ALJ, as outlined above, and Dr. Spencer's evaluation.   While the Court is not making a determination whether Plaintiff meets the requirements of Listing 12.05C based on Dr. Spencer's evaluation, the Court must review the evidence submitted to both the ALJ and the Appeals Council to determine whether the denial of benefits was erroneous.   *See Ingram*, 496 F.3d at 1265, 1262 ("When a claimant properly presents

new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous.").

Although it appears that Plaintiff is arguing Dr. Spencer's evaluation is new evidence that the ALJ should have considered that would require the Court to analyze the case pursuant to sentence six of 42 U.S.C. § 405(g), the circumstances of this case require review under sentence four.[7]   The Eleventh Circuit has held that "a decision of the Appeals Council to deny review after refusing to consider new evidence is a part of the 'final decision' of the Commissioner subject to judicial review under sentence four of section 405(g)." *Ingram*, 496 F.3d at 1269 (noting that evidence properly presented to the Appeals Council has been considered by the Commissioner and is part of the administrative record and is not "new evidence") (citing *Keeton v. Dept. of Health & Human Services*, 21 F.3d 1064 (11th Cir. 1994)).   "In order to remand pursuant to the fourth sentence of § 405(g), the court 'must either find that the decision is not supported by substantial evidence, or that the Commissioner (or the ALJ) incorrectly applied the law relevant to the disability claim.'" *Moore v. Barnhart*, 405 F.3d 1208, 1210 n.2 (11th Cir. 2005) (quoting *Jackson v. Chater*, 99 F.3d 1086, 1091 (11th Cir. 1996)).   The district court must consider the entire record, including new evidence submitted to the Appeals Council for the first time, in

---

[7] To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.   *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996); 42 U.S.C. § 405(g).   In contrast, sentence six of 42 U.S.C. § 405(g) provides for remand to the Commissioner for the taking of additional evidence upon a showing "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."   42 U.S.C. § 405(g).

determining whether the Commissioner's final decision is supported by substantial evidence. *Smith v. SSA*, 272 F. App'x 789, 802 (11th Cir. 2008).

When a claimant submits new, noncumulative, and material evidence to the Appeals Council after the ALJ's decision, the Appeals Counsel must consider the evidence, but only when it relates to the period on or before the date of the ALJ's hearing decision. 20 C.F.R. § 404.970(b). The regulations provide that the Appeals Council "shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the ALJ's hearing decision." *Id.* "Material" evidence is evidence that is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987) (quotation omitted).

In this case, the Appeals Council considered Plaintiff's newly-submitted evidence but found no basis to review the ALJ's decision and denied Plaintiff's request for review. The Council stated that it "considered the reasons [Plaintiff] disagree[d] with the decision and the additional evidence listed on the enclosed Order of Appeals Council" (Tr. 1, 6), but denied Plaintiff's request for review because it did not believe the new information provided a basis for changing the decision of the ALJ. Tr. 2. The Order of Appeals Council, however, made Dr. Spencer's evaluation part of the record.[8]  Tr. 6.

---

[8] Plaintiff does not specifically argue that the Appeals Council failed to consider the new evidence that he submitted to it. Rather, Plaintiff argues that the ALJ's opinion is not based on substantial evidence.

Given the mental impairment evidence before the ALJ and the Appeals Council, the Court agrees with Plaintiff that the ALJ's decision is not supported by substantial evidence.   Defendant cites to *Lowery v. Sullivan*, in which the Eleventh Circuit found that an I.Q. score is not conclusive of mental retardation if the I.Q. score is inconsistent with other evidence in the record of the plaintiff's daily activities and behavior.   979 F.2d at 837.   In *Hodges v. Barnhart*, however, the Eleventh Circuit held that "there is a presumption that mental retardation is a condition that remains constant throughout life" and would apply to Plaintiff since the onset date of disability.   276 F.3d 1265, 1266 (11th Cir. 2001).   In *Hodges*, the plaintiff acknowledged the lack of I.Q. evidence before the age of 22, but the court agreed with the plaintiff that "I.Q. tests create a rebuttable presumption of a fairly constant I.Q. throughout her life."   *Id.* at 1268.

Here, the ALJ found that the Plaintiff's severe impairments include, in relevant part, "borderline intellectual functioning by history."   Tr. 15.   In determining Plaintiff's RFC, the ALJ considered the claimant's symptoms to determine whether there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms.   Tr. 17.   The ALJ stated that where Plaintiff's statements about the intensity, persistence, or functionally limiting effects of the symptoms are not substantiated by objective medical evidence, he must make a finding on the credibility of Plaintiff's statements based on a consideration of the entire case record.   *Id.*   The ALJ then considered the Plaintiff's testimony that he cannot read or write

and was always in special education classes.   *Id.*   The ALJ also considered Plaintiff's testimony that he has difficulty making change and does not understand the bills that come in the mail.   *Id.*   After consideration of this evidence, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC assessment, stating:

> The objective medical findings contained in the claimant's medical records simply do not support a finding of severe symptoms as he alleged.   *While the claimant's impairments are documented in his medical records,* the severity required to necessitate a finding of disability is not present.   The claimant's subjective allegations are contradicted by objective findings.

Tr. 18 (emphasis added).

The Court acknowledges that the ALJ did not have the benefit of Dr. Spencer's evaluation.   He did, however, have both examining and non-examining sources' opinions of Plaintiff's mental impairments.   He gave deference to the non-examining sources and appeared to discount entirely the opinion of the examining physician, Dr. Bernard.   *See supra* section V.A.1.   The regulations provide the Commissioner should give more weight to the opinion of a physician who has examined the claimant rather than to that of a non-examining consultant.   20 C.F.R. § 404.1527(d)(1), (2). Further, a "non-examining source's medical opinion is accorded little weight if, as here, it contradicts an examining source's opinion and cannot, standing along, constitute substantial evidence."   *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 989 n.15 (11th Cir. 2013) (citing *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991)).

The two examining sources in this case – Dr. Bernard and Dr. Zsigmond – each opined that Plaintiff's outlook and functional ability was poor and he would benefit from further psychiatric evaluation.   Tr. 233, 321.   Both noted that Plaintiff suffered from mental health problems for which he has not had treatment, and Dr. Bernard further observed that Plaintiff had difficulties throughout his entire life in learning new materials, which was evident during his schooling as a young man.   Tr. 319.   This evidence was before the Appeals Council, along with Dr. Spencer's report showing that Plaintiff had an I.Q. of 69 and was mildly mentally retarded.

"When the Appeals Council makes a decision, it will follow the same rules for considering opinion evidence as administrative law judges follow."   20 C.F.R. § 416.927(e)(3).   Notably, a district court must consider all of the evidence, including the evidence not submitted to the ALJ but considered by the Appeals Council when it reviews the Commissioner's final decision denying benefits to determine whether the decision was based on substantial evidence.   *Ingram*, 496 F.3d at 1258.

Based upon a review of the entire record, the Court finds that Dr. Spencer's evaluation is material evidence first presented to the Appeals Council that relates to the relevant time period.   *Id.* at 1262.   As recognized by the Eleventh Circuit in *Hodges*, "there is a presumption that mental retardation is a condition that remains constant throughout life" and would apply to Plaintiff since the onset date of disability.   276 F.3d at 1266.   Thus, the evidence renders the denial of benefits erroneous in this case.   Dr. Spencer's evaluation, coupled with the opinions of examiners Dr. Bernard and Dr. Zsigmond, creates a reasonable probability of a

different result.   Spencer's opinion is from the relevant time period and could establish that Plaintiff meets the criteria for Listing 12.05C for mental retardation. Notably, part of the basis for the ALJ's decision regarding the severity of Plaintiff's mental impairments was that he believed there was no medical evidence supporting Plaintiff's subjective allegations that he could not read or write, pay his bills, or make change.   Tr. 15-18.   Plaintiff has provided objective medical reports documenting that his impairment could meet the specific criteria of Listing 12.05C.   Further, the ALJ likely did not evaluate Listing 12.05C because it did not have any I.Q. evidence in the record.   Thus, Dr. Spencer's evaluation was highly relevant evidence and related back through the period of claimed disability.   The ALJ and the Appeals Council have the primary responsibility for identifying and developing the issues. *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).   They did not adequately do so here.

In considering Dr. Spencer's evaluation, along with the decision of the ALJ and the decision of the Appeals Council, the weight of the evidence is contrary to the ALJ's decision.   Therefore, the decision is not supported by substantial evidence in the record.   Dr. Spencer's evaluation would have called the ALJ to consider whether Plaintiff met Listing 12.05C.   The Appeals Council's failure to review the case based on the new, material evidence was in error.   Accordingly, this matter should be remanded to the Commissioner to consider Dr. Spencer's evaluation and determine whether Plaintiff meets Listing 12.05C of 20 C.F.R., Part 404, Subpart P, Appendix 1.

b.   *Whether the ALJ Erred When it Relied Exclusively on the Grids in Finding Plaintiff Was Not Disabled*

In a disability determination, once a claimant proves that he can no longer perform his past relevant work, "the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).   One way for the Commissioner to carry this burden is through an application of the Medical-Vocational Guidelines, also known as the "Grids."[9]   *See* 20 C.F.R. Pt. 404, subpt. P, app. 2.

Plaintiff argues that the ALJ's findings are not supported by substantial evidence because the ALJ relied exclusively on the Grids, and testimony of a VE was necessary to determine whether there are jobs Plaintiff can perform despite his impairments.   Defendant responds that an ALJ may rely exclusively on the Grids, and testimony from a VE is not required if a Plaintiff can perform the full range of work at a particular exertional level and his exertional and non-exertional limitations do not prevent the performance of a wide range of work at the particular exertional level.[10]

---

[9]   "The grids are a series of matrices which correlate a set of variables – the claimant's residual functional capacity (*i.e.*, the ability, despite impairments, to do sedentary, light, etc. work), age, educational background, and previous work experience.   Upon the entry of a set of these variables into the appropriate matrix a finding of disabled or not disabled is rendered."   *Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir. 1985).

[10]   "In the disability programs, a nonexertional impairment is one which is medically determinable and causes a nonexertional limitation of function or an environmental restriction.   Nonexertional impairments may or may not significantly narrow the range of work a person can do."   SSR 83-14, 1983 WL 31254 at *1 (S.S.A. 1983).   Non-exertional limitations affect a claimant's ability to meet the demands of jobs, other than strength demands.   20 C.F.R. § 404.1569a(c).

The ALJ noted that when a claimant, such as in this case, cannot perform substantially all of the exertional demands of a given work level and/or has non-exertional limitations, the Grids are used as a framework for decision making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or non-exertional limitations.   *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996).   "When a claimant cannot perform a full range of work at a given level of exertion or has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating that a claimant can perform other jobs is through the testimony of a VE."   *Smith*, 272 F. App'x at 799-800 (citing *Jones*, 190 F.3d at 1229).   "Exclusive reliance on the grids is not appropriate either when claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills."   *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985).   "It is only when the claimant can clearly do unlimited types of light work, ... that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy."   *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989).   However, if non-exertional impairments are minor or are found to be not credible, exclusive reliance on the Grids is appropriate.   *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 826 (11th Cir. 2010).

In a case similar to the one under review, an ALJ found that a claimant had non-exertional limitations working around unprotected heights or dangerous moving machinery.   The ALJ concluded that the claimant could perform a wide range of light

work based on the Grids, and therefore it was unnecessary to call a VE.   The

Eleventh Circuit reversed, stating:

> Under the ALJ's findings it is evident that claimant was not able to do *unlimited* types of light work, because he was precluded from work around unprotected heights or dangerous moving machinery.   Expert testimony was therefore required to determine whether Marbury's limitations were severe enough to preclude him from performing a wide range of light work.   An ALJ's conclusion that a claimant's limitations do not significantly compromise his basic work skills or are not severe enough to preclude him from performing a wide range of light work is not supported by substantial evidence unless there is testimony from a vocational expert.   It was therefore error to rely upon the grids.

*Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.1992) (internal citations omitted)

(emphasis in original).

Here, it is not clear Plaintiff can do unlimited types of light work.   The ALJ

found that Plaintiff could perform light work, but with non-exertional limitations.

Tr. 17.   The ALJ's findings reflect four non-exertional limitations – mental

impairment,[11] some limitation in climbing and balancing, inability to ascend or

descend ladders or scaffolds and restriction from being on unprotected elevations and

near dangerous moving machinery.   Tr. 21.   The ALJ summarily found that

Plaintiff's mental impairment do not significantly erode the occupational base of

unskilled work because he does not have a substantial loss in the ability to

understand, remember, and carry out simple instructions; respond appropriately to

supervision, co-workers, and usual work situations; and deal with changes while in a

---

[11] Plaintiff's mental impairments found by the ALJ include borderline intellectual functioning by history, and depression, which the ALJ considered "severe."   Tr. 15.

routine work setting on a sustained basis over a normal 8-hour work day, pursuant to SSR 85-15.  Tr. 21.

As discussed *supra*, the ALJ's findings concerning Plaintiff's mental impairment was not supported by substantial evidence based upon Dr. Spencer's evaluation that should have been considered.  Therefore, the ALJ's finding that the mental impairment does not significantly erode the occupational base of unskilled work is not supported by substantial evidence.  Whether the impairments are considered non-exertional impairments or as limitations on the range of light work Plaintiff can perform should be determined on remand by calling a VE to testify.[12]

## VI.  Conclusion

Accordingly, for the reasons stated in this Report and Recommendation, it is hereby respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner to: (1) consider Dr. Spencer's evaluation and whether Plaintiff meets Listing 12.05C of 20 C.F.R., Part 404, Subpart P, Appendix 1; and (2) if necessary, further evaluate whether given Plaintiff's impairments, there are other jobs in the national economy that Plaintiff can perform by calling a vocational expert to testify.

---

[12] If Plaintiff meets Listing 12.05C for mental retardation at step three and meets the duration requirement, however, he will be found disabled.  In that case, the ALJ would not proceed to step five, making it unnecessary to call a VE to testify.  20 C.F.R. § 404.1520.

**DONE** and **ENTERED** in Fort Myers, Florida on this 9th day of June, 2014.

CAROL MIRANDO
United States Magistrate Judge

Copies:

The Honorable John E. Steele
Counsel of record